Good morning, Your Honors. May it please the Court, Ina Lipkin on behalf of the petitioner. This is an immigration matter. And the petitioner asks the Court to review the Board's erroneous affirmance of the IJ's denial of asylum. There's really two issues here. One, did the petitioner establish that the Indian police persecuted him in the past? And two, does he have a well-founded fear of persecution in India? Now, he's an Indian national who had harm in Nepal, where he worked as a general manager of a hotel. The immigration judge found he was credible and that he did establish past persecution in Nepal. But he's not removable to Nepal. The issue is, is he removable to India? He established that because the Indian police sought him out in India while he was still there in a state of hiding, unable to find him, they arrested and tortured his father in his stead because they held an erroneous imputed political opinion that he assisted Maoists. Now, here the IJ found that the Nepalese police imputed the same political opinion onto him, and she deemed that to be past persecution. But for some reason, she didn't find that the Indian police, who had the same allegations of terrorist links against the petitioner, that he failed to establish was past persecution. Well, if I understand correctly, tell me if I'm wrong, they didn't lay a finger on him. Is that right? They did not. But they laid a finger on his dad. Okay. Well, as far as the petitioner is concerned, the finding that he wasn't persecuted by Indian police seems at least factually correct. Well, Your Honor, a well-founded fear of the future persecution is another story, but in terms of past persecution, they never touched a hair on his head. They didn't, and he concedes that. But he's a member of a social group. That social group consists of his father. And so he can establish that the Indian police imputed a political opinion onto him and harmed his family members. That family unit is one which he is a member of, and therefore, that persecution can be inferred to him. Taking that aside for a moment, and just looking at the argument of a well-founded fear, based on his membership in that social group and the repeated and continued visits of the police to his home after he departed India was sufficient, given his credible testimony and the country condition documentation, to establish that well-founded fear. I'm not – I didn't – it was not clear to me that you were arguing that he faces persecution in India because of his father's imputed opinion to him. I thought it was kind of the other way around, that his father had been harmed because your client's political opinion was imputed to the father. So could you straighten me out on that? You are completely correct, Your Honor. I think I brought up that argument really to buttress the real issue, which is the well-founded fear exists, is based on the past harm to the father. And we can see the petitioner was not harmed in the past, but he has a well-founded fear of harm based on the actions of the police towards his father and the continued visits. But what is the connection? What is the nexus between what happened to the father and the petitioner? Well, first, he's a member of that social group that includes his father. The police – the police made allegations that the petitioner aided Mayoists. They arrested the father in an attempt to lure him to present himself to the police. Who's him? Page 14 of the brief. Who do you mean, the father or the son? When you say him, to lure him? The petitioner. Oh, okay. The son, yes. So the nexus was established. Unlike the board's erroneous affirmance of the IJ's decision, it was very clear that the Indian authorities were not acting on a legitimate basis to flush out aiders and abettors of militants. They had absolutely no evidence to link the petitioner with Mayoists. They were going allegedly, because we really don't know from this record, on a tip from the Nepalese police. And instead of thoroughly investigating that by perhaps looking at the records that the Nepalese police had, they did release the petitioner. Then they would have known that he was not, in fact, an aider and abettor of Mayoists. The Nepalese police had asked him to be an informant after they released him, which clearly showed that they couldn't have possibly continued to believe he was an aider and abettor. So why would the Indian police think that he was? Because the Nepalese police told them he was. Right. But because the Indian police would have had access to the information the Nepalese police had that determined he was not an aider and abettor. The case is that this family is persecuted by the Nepalese police in Nepal, the Indian police in India, because of a belief by both of them that the family is involved in Mayoist terrorist activities. This is similar to the South African case of the daughter whose father was an apartheid person who was persecuted as such. Is that your point? Yes. I will reserve the rest of the time unless there's more questions. Thank you, Ms. Kennedy. Good morning, Your Honors, and may it please the Court. My name is Drew Brinkman. I'm appearing on behalf of the Attorney General. This case involves – in this case, the Nepalese government suspected that Mr. Bhutia was somehow involved with the Mayoist insurgency that was going on in Nepal in 2003. When Mr. Bhutia fled Nepal to India, the Nepalese government tipped off the Indian government about its suspicions. So the Indian government followed up on that tip, and they interrogated Mr. Bhutia's father briefly. They didn't torture him, as was asserted here. They slapped him two or three times. That's clear in the record. So based on this evidence, that's really the heart of the claim. The immigration judge found that Mr. Bhutia was not persecuted by the Indian authorities, that his fear of future persecution was speculative, and that the Indian government had a legitimate non-persecutory reason for investigating Mr. Bhutia. What was the legitimate non-persecutory reason? Well, they received a tip from the Nepalese government that he was involved with the Mayoist insurgency at that time. India faces a problem with Mayoist-related terrorism. That's clear from the background evidence. Is that not political? Is that political persecution? Well, there's a difference between violence committed against innocents, and there's a difference between the police and... Let me read you a statement of Chairman Mao in 1938. Every communist must grasp the truth. Political power grows out of the barrel of a gun. Doesn't that give you an indication what Mao's terrorists are? They're politicians, politicians perhaps not using our methods of politics, but they think of themselves as politicians. I don't draw the distinction between terrorism and lack of political connection in the Maoists. The Indian government has a right to protect itself from innocent civilians being killed from its own... Of course it does. Well, that's what the immigration judge found was happening here. The Indian government was not seeking to suppress his political opinion. They had received a tip. They acted on the tip. And they have a problem with Mayoist-related terrorism. The difference between politics and terrorism, that's not the Mayoist view. All right. Go ahead. Well, differentiating between a terrorist and a political activist, there's a fine line. I'll admit that, Your Honor. But there's nothing to suggest that they were going after him merely because he had a Maoist political belief. The only time they came and even visited his father, there had been a bombing in the area. What I'm suggesting to you is to have a sincere Maoist political belief is to be a terrorist. So under your theory, any terrorist would be deserving of asylum, or any Maoist terrorist would be deserving of asylum in the United States, even if they were killing innocent civilians based on their political beliefs. If the question were whether being persecuted for political reasons to say that a Maoist terrorist is different from a Maoist political activist is a distinction I don't accept. I understand your position to be he doesn't get a freebie because if he engages in terrorist activity, it's for political motives. Is that what you're saying? That's the distinction, Your Honor. If you have a courthouse in Oklahoma City, you don't get a pass because you do it for political motives. Right. And with the asylum law, what is concerned is what are the motivations of the Indian government here? Are they trying to suppress a political opinion or are they trying to protect themselves? They have the right to protect themselves. They don't have the right to suppress a political opinion. Bring me up to date, would you please, on what happened with the peace accords in 2006? What's the story with that? Well, from the record or outside the record? From the record. The IJ said basically even if there were problems, there's an accord that was reached. In Nepal, there was a Maoist insurgency. That accord was reached in 2006. From 2006 to 2007, the Maoists were beginning to be incorporated into an interim government until there was an election where a new constitution was voted on, I believe in 2007. Since that time, the prime minister of Nepal is now, I believe, a Maoist. So the Maoist problem is much different now in Nepal, at least, than it was then. So the import of this is even if there were past persecution, or even if there were some kind of concern for future persecution, there have been changed country conditions which argue against fighting future persecution. To the extent that the Indian government was aiding the Nepali government and that's all the Indian government was doing here, then yes. The changed circumstances in Nepal would defeat his claim. But to the extent that the Indian government has its own interest in him because there are Maoist-related terrorists, those issues still exist in India to this day. So that would still be out there. Okay. Fair enough. I would just like to stress that really all that happened here is they followed up with his father. They slapped him, interrogated him for two hours, released him. Then the only time they ever followed up since that point was when there was a terrorist-related incident in the father's vicinity. And then they only questioned the father. They didn't continue to slap him or abuse him in any way. So the IJA is finding that Mr. Bhatia is going to be persecuted when he returns to India is speculative. That's very much supported by the record. Okay. If there's no further questions. Thank you, Mr. Brinkman. Ms. Lipkin, back to you. I want to address the issue of how the Indian police treated the father. They, in fact, beat and slapped him two to three times. That's in the record at 105 and 130. So it wasn't just a polite interrogation and letting him go. And not only that, then they repeatedly came to the house and harassed the family. That's not part of legitimate investigative actions. And, again, I just want to revisit my earlier statement that the Petitioner has established a well-founded fear of persecution because he established that the Indian police did not act legitimately in targeting the father and him, or targeting him through the father and the continued police visits. And the reason is, if the Nepalese police tip them off that he's suspicious, then they should have worked with the Nepalese police to see why they thought he was suspicious. Having done so, they would have found out that they released him and didn't find him suspicious after all. But the failure to conduct a legitimate police investigation shows that the Indian police did not act legitimately, and thus a well-founded fear was established. Ms. Lipkin. Thank you very much. Thank you. Mr. Brinkman, thank you.  Good morning.
judges: Schroeder, Silverman, Bea